IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ABRAMSON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 18 CR 00681<br><br>Chicago, Illinois<br>April 1, 2024<br>9:40 a.m. |

TRANSCRIPT OF PROCEEDINGS - Arraignment
BEFORE THE HONORABLE VIRGINIA M. KENDALL

APPEARANCES:

For the Government: UNITED STATES ATTORNEY'S OFFICE by
MR. RICHARD M. ROTHBLATT
Assistant United States Attorney
219 South Dearborn, 5th Floor
Chicago, IL 60604

For the Defendant: MR. NISHAY KUMAR SANAN
53 West Jackson, Suite 1437
Chicago, IL 60604

Court Reporter: GAYLE A. McGUIGAN, CSR, RMR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 2504
Chicago, IL 60604
312.435.6047
gayle_mcguigan@ilnd.uscourts.gov

(In open court.)

(Defendant enters courtroom.)

THE CLERK: 18 CR 681, U.S. versus Michael Abramson.

MR. ROTHBLATT: Good morning, your Honor. Richard Rothblatt on behalf of the United States.

THE COURT: Good morning.

MR. SANAN: Good morning, your Honor. Nishay Sanan on behalf of Mr. Abramson, who is present.

THE COURT: Good morning.

Good morning, Mr. Abramson.

THE DEFENDANT: Good morning.

THE COURT: I have here a superseding indictment.

Did you have a chance to review it with your client?

MR. SANAN: We have, Judge. Judge, acknowledge receipt of the superseding indictment. We'll waive formal reading and enter pleas of not guilty to all counts.

THE COURT: Very well then.

Please tell him the maximum penalties for the charges now.

MR. ROTHBLATT: Very good, Judge.

In Counts 1 through 13, the defendant is charged with making false statements in corporate and personal income tax returns. The maximum penalties include a term of imprisonment of up to three years per count, a fine of up to $100,000 per count, a term of supervised release of up to one year, and a

special assessment of $100 per count.

THE COURT: Okay.

MR. ROTHBLATT: In Count 14, the defendant is charged with witness tampering, in violation of 18 U.S.C. 1512(b)(1). The maximum penalties include a term of imprisonment of up to 20 years, a fine of up to $250,000, a term of supervised release of three years, and a special assessment of $100.

In Count 15, the defendant is charged with contempt of court order, in violation of 18 U.S.C. 401(3). The maximum penalties include a term of imprisonment of life imprisonment. There is no statutory maximum imprisonment. A fine of up to $250,000, a term of supervised release of up to three years, and a special assessment of $100.

THE COURT: That is the maximum amount of time and penalty that you can receive if you're convicted of each of these counts within the indictment.

Do you understand that, Mr. Abramson?

THE DEFENDANT: I do.

THE COURT: Okay. All right. So let's give you a date for pretrial motions.

MR. SANAN: Yes, Judge.

THE COURT: Do you think you can get any on file within -- let's see, we've got -- do we have a new date in July?

MR. SANAN: Judge, we have a July 1st trial date to

pick the jury, and I think we're supposed to start then after the 4th holiday.

THE COURT: Oh, I was wondering how that -- I looked at that, and I thought why did I do that.

MR. SANAN: I think our plan was to pick the jury, because I think the 1st is a Monday --

THE COURT: And then --

MR. SANAN: -- I think.

THE COURT: And let them go. Okay.

MR. SANAN: Right.

THE COURT: Okay. So let me do this then. Looking at the calendar, let me give you until the 22nd of April to file any pretrial motions.

And then any responses to those will be May 6.

Any replies will be May 13.

I'll see all of you on May 16 -- am I in then? Check on all those conferences in May. I think I am in, right?

THE CLERK: You are in.

THE COURT: Yes. May 16 at 9:30.

I'll exclude time for the filing and review of pretrial motions.

And, hopefully, I'll be able to deal -- determine whether there's any need for hearings or anything at that time, which will give us enough time to finish up what we have to do before the July date. Okay?

I think today I'll probably look on the -- at the calendar and get you in for a final pretrial conference and your deadlines for 404(b) and *Santiago*, et cetera, so check your dockets for those. I'll probably try --

MR. ROTHBLATT: Judge, you already set those.

THE COURT: Oh, I did.

MR. ROTHBLATT: Yes.

THE COURT: Oh, never mind then. I'm ahead --

MR. ROTHBLATT: We have set all that --

THE COURT: -- of myself.

That's good. That's what I like to hear.

Anything else that I need to address with you today, Mr. Sanan?

MR. SANAN: Judge, we filed a motion for you to reconsider pretrial release.

THE COURT: Okay.

MR. SANAN: I don't have the docket number, and I apologize. I printed a non-ECF version of it.

MR. ROTHBLATT: 191.

MR. SANAN: Judge, 191.

THE COURT: Okay.

THE CLERK: It's also in your stack, your Honor.

THE COURT: Oh, is it in my stack, too?

THE CLERK: It is.

THE COURT: Okay. I've got it.

So if he were to be released, where would he be living and with whom and what would he be doing?

MR. SANAN: Judge, there's two options. And I think one of the --

(Counsel conferring.)

MR. SANAN: So, Judge, his wife has an illness where for the first 30 days he would live with his son. Because of coming out of prison, they're worried about his wife's safety. And his son is present --

THE COURT: Health safety --

MR. SANAN: -- Michael Abramson, Junior, is here.

THE COURT: Medical safety.

MR. SANAN: Medical safety, because coming out of the prison, they just want to be safe. So the first 30 days would be with his son, who is present. Then he would transfer back to his Wilmette home where he was living before he was detained, your Honor.

THE COURT: Okay.

MR. SANAN: He would be working not in the same office as where the individual who was part of Counts 14 and 15. She is still employed, Judge. We laid that out. No one has intentions of letting her go. They value her work. He will not deal directly -- he will not deal with her at all, actually. It will be the people who have been dealing with her while he's been in prison for the last month. He would like to

continue, obviously -- he's running a law practice, which is heavy probate. She does work on the probate stuff, but it's more accounting. He would do the legal work from a different location and not have any interaction with her whatsoever. And then he would continue to run his other businesses up until the day of the trial.

THE COURT: Okay. And your position?

MR. ROTHBLATT: Judge, there's no basis for the Court to revisit its original determination. The Court found, and this finding has now been sustained by a jury, probable cause that the defendant violated the law through witness tampering in the lead-up to trial and that he had violated the Court's orders.

For the reasons the defendant proffers that he can be released here are that, first, he's quickly learned his lesson, but, Judge, that's not really the purpose of pretrial release. This isn't an exercise in detaining him for a period of time so he feels like he understands better the law.

The defendant has also been an attorney for approximately 50 years. He did know the law. He didn't need time incarcerated to learn a lesson. This was a serious violation, something the Court said it had never seen before. The government, as I'm standing here, I've never seen this before.

The defendant wrote out a transcript -- on a

transcript scripted answers for a witness two weeks before trial. And even if the defendant represents to the Court that he's not going to maintain contact with Individual B, the person to whom he gave the transcript, it's someone who is still working for him in some capacity. He has financial control over her. And he will still be on release, able to contact other potential witnesses more freely.

Also contrary to defendant's second point articulated in this motion, that he has been otherwise compliant with the Court's orders, the government articulated in its motion and to this Court several purported other violations of his pretrial release throughout the course of this case, including one at trial that your Honor had to admonish him about regarding contact with a witness.

So I don't believe there's any basis for the Court to reconsider its ruling. Its ruling was premised on the severity of the violation, one of the most serious this Court said it had seen, had seen nothing of the ilk, and the risks for further impeding justice here. The defendant right now is incarcerated. He has limited ability to contact witnesses. His calls are recorded. His emails are recorded. This is a good thing for someone who attempted to obstruct a trial two weeks before it was set to go.

I don't think there's any basis for the Court to reconsider its ruling.

THE COURT: Any reply?

MR. SANAN: Yes, Judge.

There's -- no one is denying the severity of the allegations made by the government in their indictment. We're not denying that part. It's something that the Court will have -- obviously, a jury will hear at trial. And a grand jury came back with probable cause to believe that. But the issue with bond is are there less severe remedies to make sure this Court knows that, number one, he's not a flight risk, which I don't think there's ever been an issue about. I guess the government is couching this as a danger to the community because of contact with a witness.

Judge, the government has brought up that your Honor has had to admonish him. It's been about the same person. The last time we were here during trial, your Honor admonished him about whether or not she owns stock, which your Honor admonished him. And then obviously you revoked his bond based on what this -- all the parties believe the severity of the alleged allegations.

But the issue with bond is are there less severe restrictions that can be placed on Mr. Abramson to assure he's not a danger to the community or a flight risk.

So I'm assuming we don't have to worry about flight risk because he's traveled foreignly, he's come back. He's traveled domestically, he's come back. There's never been an

issue of him being a flight risk.

The issue of what I'll say is danger to the community, Judge, there's ways this Court can assure -- and it's been in place for the last month, because he does have access to the phone, but at no time has he tried to contact Ms. Roth in any form or fashion. Nothing has been done to jeopardize her job. In fact, I've spoken with his son. I've spoken with other people in the company. They want to make sure she continues to work because she's considered a valued employee.

At this point, he's presumed not inno -- he's presumed not guilty, Judge. There is a variety of conditions this Court could put on Mr. Abramson to assure that this alleged conduct, if it took place, doesn't happen again.

And I just want to make sure the Court understands, no one is doubting the severity of the allegations. Mr. Abramson understands the severity of the allegations, especially after reading the new indictment.

But I think there are conditions this Court could put on him. Given our trial is in three months, roughly three months, and he's out in Kankakee, the majority of this case, obviously your Honor knows that the first 13 counts are the tax fraud, in order to prepare appropriately, in order to ensure everybody's safety, that, at minimum, Judge, put him on house arrest. Give him that opportunity where he can't go anywhere. Your Honor, we can check up on him as often as your Honor

wants. But I think a good starting point, which is less severe than him being incarcerated from now until July, is, at minimum, house arrest, Judge, because that is one condition where it can be assured.

And, your Honor, Ms. Roth reported this herself -- sorry, Individual B reported this herself. I'm assuming -- again, this is an assumption -- that if there's any type of contact, which she knows, it's been advised by her counsel that she's not supposed to have with Mr. Abramson, it will get reported and we'll be right back here. And at that point, your Honor can lock him up because then he did screw up.

But I think there is less restrictive means than incarcerating Mr. Abramson on this type of case.

THE COURT: So I just reviewed this this morning, and I think I want to take it under advisement and give you a ruling this week.

But since his son is here, tell me what his -- because if the first 30 days that you're proposing that he be within his son's house, what does he do and where does he live?

MR. SANAN: Can he approach?

THE COURT: Yes, that's fine -- well, you can tell me in case I have to -- you know, you can just tell me --

MR. SANAN: Judge, Michael Abramson, Junior --

THE COURT: Yes.

MR. SANAN: -- which is a Junior, is employed with his

father to run the probate business.

THE COURT: Oh, okay.

MR. SANAN: So what happens is -- he's not a lawyer, but he runs the financial side of the probate business, and he has had full interaction with Ms. Roth as she provides accounting for the probate business. That's what's happened over the last month since Mr. -- Mr. -- Senior has been incarcerated.

THE COURT: Okay.

MR. SANAN: So the plan would be until he passes the health requirement, because no one wants harm to come to his wife because of coming out of prison, it would be 30 days with Abramson, Junior, and then he would go back to the Wilmette home --

THE COURT: But where does he live?

MR. ABRAMSON, JR.: I live in Lake Forest.

THE COURT: In Lake Forest?

And who lives with you?

MR. ABRAMSON, JR.: My wife.

THE COURT: Any children?

MR. ABRAMSON, JR.: No.

THE COURT: No. Okay.

And is your wife employed?

MR. ABRAMSON, JR.: No.

THE COURT: I don't know if you had a chance to look

into even his background yet to see if --

MR. ROTHBLATT: We haven't, Judge. And Pretrial has had no kind of examination, to my knowledge, out there --

THE COURT: Okay. Well, I'll ask Pretrial to give me that background so that we know that for sure.

But I'll make a decision this week, because I just read it this morning, okay? And I'll make sure that I look at all of your concerns. All right? And give you a ruling this week.

MR. SANAN: Thank you, Judge.

THE COURT: Anything else from the government?

MR. ROTHBLATT: No, your Honor.

THE COURT: All right. Thanks very much.

MR. ROTHBLATT: Thanks, Judge.

MR. SANAN: Thank you, Judge.

THE COURT: Thank you.

(Concluded at 9:52 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ GAYLE A. McGUIGAN* *April 22, 2024*
GAYLE A. McGUIGAN, CSR, RMR, CRR
Official Court Reporter