UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL ABRAMSON | No. 18 CR 681<br><br>Hon. Virginia M. Kendall |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT CERTAIN EVIDENCE AT TRIAL PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, the Acting United States Attorney for the Northern District of Illinois, hereby respectfully moves this Court, *in limine*, for entry of an order admitting certain evidence at trial pursuant to Federal Rule of Evidence 404(b). The Court previously granted the government's motion to admit the same evidence under Rule 404(b) for the first trial. R. 141.[1] The Court should likewise grant the present motion.

**Charges and Factual Background**

On October 11, 2018, a grand jury returned a thirteen-count indictment charging defendant Michael Abramson with making false statements in personal and corporate income tax returns, in violation of Title 26, United States Code, Section 7206(1). R. 1. These false statements relate to payments defendant made to his mistress, Jerilyn Totani, through one of his companies, Eastern Advisors. The false statements enabled defendant to take unwarranted corporate tax deductions and

---

[1] The government incorporates by reference its prior motion to admit evidence pursuant to Federal Rule of Evidence 404(b). R. 105. Below, the government summarizes the key arguments from its original motion and the Court's order granting the government's motion.

disguise gift payments to Totani as loans to avoid additional taxable income on his tax returns.

On March 18, 2024, a grand jury returned a superseding indictment. R. 184. The superseding indictment charges defendant with the originally charged thirteen counts of false statements in corporate and individual tax filings, in violation of Title 26, United States Code, Section 7206(1), one count of witness tampering, in violation of Title 18, United States Code, Section 1512(b)(1), and one count of contempt of court order, in violation of Title 18, United States Code, Section 401(3). R. 184.

*Defendant's Extramarital Relationship with Totani*

Beginning in the 1990s, defendant, an attorney and business owner, began a romantic relationship with Jerilyn Totani, an exotic dancer whom he met at a club then known as The Doll House. R. 184 ¶ 1(j). Early on during their relationship, defendant rented Totani an apartment at 1122 North Clark in Chicago to support Totani and facilitate their extramarital relationship. In around 1999, 1122 North Clark converted to a condominium building and defendant purchased the condominium for approximately $250,000. Totani lived in 1122 North Clark (the "Clark Condominium") full time and defendant put the condominium in a trust in the name of a nominee (Richard Forcone) in order to conceal his connection to the condominium and Totani.

Forcone testified before the grand jury[2] that, despite not being friendly or particularly close with defendant: "[defendant] asked me to put a condominium or something in Chicago in my name because he wanted to keep it from his wife and keep it off his tax returns because he had a girlfriend [Totani] there." *See* Ex. A at 7, 9 ("[Defendant] said he had a girlfriend that he was taking care of and he didn't want his wife to know about it. [Defendant] didn't want it on his taxes or anything else."). Forcone testified that he had no sense as to why defendant asked him to put the condominium in his (Forcone's) name. *Id.* at 9-10. Forcone never personally saw the condominium or received rent from defendant in connection with Totani's use of the condominium.

*Defendant Directed Payments to Totani Through Eastern Advisors*

Defendant caused his bookkeeper, Individual B, to make regular payments of $2,500 to Totani on the 15th and 30th of each month, booking those payments as "advance on commissions." These payments, in part, came from money derived from an agreement between Eastern Advisors and Outfront Media ("Outfront") related to a negotiated agreement for certain billboards in Rosemont, Illinois. Defendant also directed Individual B to pay Totani's expenses, including credit card bills and medical bills, and to cause those payments to be included in a loan account (the "JT Loan Account").

---

[2] *See* Exhibit A to the Government's Original Motion to Admit Evidence Pursuant to Rule 404(b). R. 77 (Transcript of Forcone's Grand Jury Testimony, filed under seal pursuant to the Court's order). R. 61.

3

Between 2006 and 2014, defendant personally made (and caused Individual B to make) hundreds of thousands of dollars in purported commissions payments to Totani and approximately $700,000 in payments either to, or on behalf of, Totani and to record the payments as loans from defendant to Totani through the JT Loan Account. While characterized as "loans" from Eastern Advisors, these payments were taxable distributions. There was no evidence supporting the characterization of these payments as loans, nor was there any evidence that the JT Loan Account was a personal loan from defendant to Eastern Advisors for the benefit of Totani (as defendant argued at his original trial).

Between its inception in 2002 and 2013, Eastern Advisors, the entity through which defendant provided hundreds of thousands of dollars to Totani, was required to, and did not file, an annual United States Corporation Income Tax Return, Form 1120. In or around the fall of 2013, the IRS began requesting records relating to Eastern Advisors and made a formal request to another business associate of defendant through the Mexican tax authorities, which request mentioned both Eastern Advisors and defendant. Around that same time—and for the first time—defendant asked Individual B to prepare Forms 1099 from Eastern Advisors to third parties (including to Totani), and to file amended returns for his companies to include Eastern Advisors (which, as discussed above, had not filed a tax return between 2002 and 2013). Similarly, around that same time, and for the first time, defendant asked Individual B to go back through the payments from Outfront, determine what the payments to Totani should have been since 2003, and reclassify certain payments

4

that had already been made as part of the JT Loan Account (thus, increasing the loan amount).

*False Tax Returns*

Between 2014 and 2015, defendant caused his tax preparer to prepare United States Corporation Income Tax Returns, Forms 1120 and 1120X, including schedules and attachments, for Leasing Employment Services, PayTech, and Eastern Advisors for calendar years 2006 through 2014. R. 184 ¶ 1(s). The returns included information concerning the income and business expenses of Eastern Advisors. *Id.* The tax filings included improper deductions related to the personal payments made to Totani from Eastern Advisors and a schedule (Schedule L) referencing a loan receivable from "JT" (Jerilyn Totani), which, in truth, reflected additional personal payments from defendant to Totani through Eastern Advisors. Those additional payments were not a loan and, thus, not an asset to Eastern Advisors. The false statements in Leasing Employment Services' amended returns for 2006 through 2012 and returns for 2013 and 2014 and defendant's personal income tax returns for 2011 through 2014 resulted in tax loss to the IRS in the amount of approximately $266,612.

## Legal Standard

Rule 404(b)(1) prohibits the use of "other acts" evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019). But Rule 404(b)(2) provides a non-exhaustive list of other purposes for which such evidence is admissible. It states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b)(2). *See also Brewer*, 915 F.3d at 415 (explaining that Rule 404(b)(2) permits the introduction of other act evidence to prove identity and modus operandi) (citing *United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017)); *United States v. Taylor*, 522 F.3d 731, 734-36 (7th Cir. 2008) (evidence of other bad acts is admissible so long as the evidence is not introduced to show the defendant's bad character).

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (*en banc*), the Seventh Circuit "set the roadmap for determining which camp a particular piece of other-act evidence falls into." *Brewer*, 915 F.3d at 415. Under *Gomez*, "after a Rule 404(b) objection, the proponent of the other-act evidence must demonstrate that the evidence is relevant to a legitimate purpose 'through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860).

"If the proponent does so, the district court must then use Rule 403 to determine 'whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice,' taking into account 'the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the

6

case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860); *see also United States v. Thomas*, 897 F.3d 807, 813 (7th Cir. 2018).

## Argument

Through this motion, the government seeks to admit: (1) evidence of defendant's non-filing of tax returns for Eastern Advisors from 2002 through 2013; and (2) defendant's purchase of the Clark Condominium and its placement in a trust in a nominee's name. Defendant's failure to file annual tax returns (Form 1120s) for Eastern Advisors is referenced in the indictment. R. 184 ¶ 1(q). The purchase of the Clark Condominium for the benefit of Jerilyn Totani and its placement into a trust in a nominee's name is not "other acts" evidence, but the government again discloses it out of an abundance of caution. Both pieces of evidence are admissible under Federal Rule of Evidence 404(b) because such evidence would be offered for a relevant, non-propensity purposes – to prove defendant's motive to file the false returns, knowledge of their falsity, and willfulness in filing accurate returns.

### I. The Court Should Permit the Government to Introduce Evidence of the Non-Filing of Eastern Advisors' Tax Returns.

The government re-adopts the arguments set forth in its original motion regarding the introduction of evidence of Eastern Advisors' non-filing. *See* R. 105 at 7-11. In sum, in tax cases, courts have repeatedly held that the government may use uncharged acts, including previous failures to file tax returns, to establish defendant's motive, knowledge, and willfulness. *See, e.g.*, *United States v. Mendoza*, 382 F. App'x 507, 511 (7th Cir. 2010); *United States v. Benalcazar*, No. 09 CR 144, 2011 WL 4553027, at *15 (N.D. Ill. Sept. 29, 2011); *United States v. Anzaldi*, 800 F.3d

7

872, 882 (7th Cir. 2015); *United States v. Taylor*, No. 17 CR 658-2, 2019 WL 4410279, at *6 (N.D. Ill. Sept. 16, 2019); *United States v. Borchert*, No. 13 CR 81, 2014 WL 1031433, at *2 (N.D. In. Mar. 17, 2014).

The Court previously admitted such evidence, finding that "evidence of Defendant's non-filing of tax returns for Eastern Advisors from 2002 through 2013 is admissible for the relevant, non-propensity purposes of proving Defendant's motive to file false returns, knowledge of their falsity, and willfulness in filing accurate returns." R. 141 at 2. The Court determined that the failure to file tax returns for Eastern Advisors "served the same purpose as the crimes for which he is currently charged," and reflected "that [defendant] had the same motive to commit both the uncharged and charged acts." *Id.* The Court also determined that the non-filing of the Eastern Advisors' returns "tends to show that Abramson knew the payments he made to Ms. Totani through that entity were not legitimately earned business expenses, so he wants to avoid filing returns with false statements." *Id.* Thus, the Court found that non-filing evidence went to defendant's willfulness and knowledge of the falsity of the statements in the charged returns. *Id.* The Court's findings were correct.

As an additional basis for admissibility, in the upcoming re-trial, defendant is charged with additional crimes, including witness tampering in connection with a scripted transcript of Individual B's testimony at his first trial, which he provided to Individual B. Individual B was defendant's bookkeeper. At the first trial, the government asked Individual B about certain tasks that defendant requested

8

Individual B to complete in 2013 and 2014, for the first time. These tasks included recharacterizing certain payments to Totani, issuing Totani a Form 1099 from Eastern Advisors, and preparing consolidated amended tax returns to include Eastern Advisors. Individual B testified, under oath, about defendant making those requests of her, and her understanding as to why those requests were being made. In the scripted transcript defendant provided to Individual B, which serves as the basis for Counts Fourteen and Fifteen, defendant provided information purportedly indicating that the requests were in connection with an application for a "bank loan" for Eastern Advisors. At trial, the evidence will show that there is no record of Eastern Advisors or defendant applying for a bank loan in 2013 or 2014.

Here, defendant, knowing tax authorities had sought records relating to him and Eastern Advisors and that Eastern Advisors had not filed tax returns between 2002 and 2013, asked Individual B to take ameliorative steps, including recharacterizing certain payments to Totani, issuing Totani a Form 1099 from Eastern Advisors, and preparing consolidated amended tax returns to include Eastern Advisors. Then, after that testimony came out at defendant's first trial, defendant attempted to create a new narrative for Individual B for his re-trial—that those steps actually related to a purported "bank loan" Eastern Advisors was seeking to obtain. The non-filing evidence thus establishes the true motivation of defendant's requests of Individual B in 2013 and 2014 and further establishes that the later-supplied false narrative was meant to corruptly persuade Individual B to influence her testimony at the retrial.

9

Accordingly, the government requests that the Court grant the government's motion to admit evidence of defendant's non-filing of the Eastern Advisors tax returns for the years 2002 through 2013.

## II. The Court Should Permit the Government to Introduce Evidence of Defendant's Use of a Nominee as the Owner of the Clark Condominium.

The government re-adopts the arguments set forth in its original motion regarding the introduction of evidence of defendant's use of a nominee in connection with the ownership of the Clark Condominium. *See* R. 105 at 11-13. The government still maintains that defendant's use of a nominee in connection with the purchase/ownership of the Clark Condominium does not constitute other acts evidence under Rule 404(b). However, to the extent that such evidence is other acts evidence under Rule 404(b), evidence of defendant's use of a nominee for the trust that owned the Clark Condominium is admissible to prove defendant's motive in filing the tax returns that included the purported loan payments to Totani on the corporate returns.

Previously, the Court found that the Clark Condominium evidence was "not 'other acts' evidence as contemplated by Rule 404(b)." R. 141 at 2. The Court determined that such evidence was "neither criminal nor inherently sinister," and "shows no propensity to commit crimes." *Id.* The Court also found that, even if it did constitute Rule 404(b) evidence, the Clark Condominium evidence established defendant's motivation to conceal his connection to Totani and supporting her lifestyle. *Id.* Once again, there is no basis to disturb the Court's prior ruling.

## **Conclusion**

For the reasons set forth above, the government respectfully requests that this Court enter an order, *in limine*, admitting evidence of defendant's non-filing of Eastern Advisors tax returns for the years 2002 to 2013 and defendant's purchase of the Clark Condominium and placement of the condominium into a trust in a nominee's name to prove defendant's motive, knowledge of the falsity of the charged tax returns, willfulness, and efforts to corruptly persuade Individual B's testimony at retrial pursuant to Federal Rule of Evidence 404(b)(2).

Date: May 1, 2024        Respectfully submitted,

                                      MORRIS PASQUAL
                                      Acting United States Attorney

By:    */s/ Richard M. Rothblatt*
       Richard M. Rothblatt
       Misty N. Wright
       Assistant United States Attorneys
       219 South Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       (312) 353-5300